IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LARECYA S. DUNN, § | |
| *Plaintiff*, § | |
| § | |
| v. § | Civil Action No.: 4:22-cv-0789 |
| § | |
| KILOLO KIJAKAZI, § | |
| COMMISSIONER OF THE § | |
| SOCIAL SECURITY ADMINISTRATION, § | |
| *Defendant*. § | |

## MEMORANDUM AND RECOMMENDATION

LaRecya S. Dunn filed the present action under the Social Security Act, 42 U.S.C. §§ 405(g) for review of the Commissioner's final decision denying her request for disability insurance benefits.[1]  Dunn and the Commissioner filed cross-motions for summary judgment.  Having considered the parties' filings, the record, and the law, Dunn's Motion (ECF 21) is DENIED, the Commissioner's Motion (ECF 22) is GRANTED**,** and the final decision of the Commissioner is AFFIRMED.

**I.     Background**

Dunn filed a Title II application for disability insurance benefits on November 4, 2019 alleging disability beginning August 27, 2019.  Following the denial of her

---

[1] The District Judge referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  ECF 2.

application and subsequent request for reconsideration, Dunn requested a hearing before an Administrative Law Judge ("ALJ"). Dunn was represented by counsel at a telephone hearing on March 30, 2021, at which Dunn and a vocational expert, Susan Rapant, testified. The ALJ issued an unfavorable decision on April 23, 2021. Dunn sought review of the ALJ's unfavorable decision with the Appeals Council. Upon denial of review, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

### A. Evidence Introduced at The Hearing

*Claimant's testimony.* Dunn testified at the hearing that she was 41 years old and held a bachelor's degree in biology. Tr. 40. She worked for years as a medical technician for Harris County Hospital District and as a home health aid. *Id.* She is 5' 2" tall and weighs around 180 lbs. Tr. 42. It takes her a long to time read and comprehend what she is reading. Tr. 43. About two and half years before the hearing she started having trouble staying awake and having trouble staying focused and keeping up at work. *Id.* She would fall asleep at a red light when driving or while on the phone. Tr. 43-44. She was diagnosed with what she called "sleep paralyzation." Tr. 44. She would have 20-30 episodes a day. *Id.* The episodes last 20-25 minutes on average but can be longer and can occur at any time. Tr. 45. She feels restless, lazy, and irritable. Tr. 47. She sometimes has periods of daydreaming while standing during an episode, and the episodes give her migraine headaches. Tr.

48. She also has back, leg, and hand pain. Tr. 49-50. She can only walk a block and can't lift anything with her right hand. Tr. 50. Her legs tingle when she sits too long. Tr. 51. Her condition makes her depressed. Tr. 52. Upon questioning from the ALJ, Dunn testified that she can drive but not often or far, and she has trouble falling asleep and staying asleep. Tr. 53. She went about 5 years without taking any medicine for narcolepsy, which she attributes to lack of insurance prior to 2019. Tr. 54.

*Vocational expert testimony.* The vocational expert, Susan Rapant, testified that Dunn's past work as a medical technician was light, skilled work, and her home health aid work was medium, semi-skilled work. Tr. 40-41. In response to a hypothetical question from the ALJ regarding "an individual who can lift or carry about ten pounds frequently or 20 pounds occasionally, stand and walk six or sit six hours in an eight-hour day with normal breaks . . . limited to occasionally overhead reaching with the left upper extremity . . . limited to understanding, remembering, and carrying out simple instructions . . . [limited to] one to three step tasks that are routine and repetitive without frequent changes in duties . . . [n]o forced pace or assembly line work . . [and] [w]ould be better served with a job that requires standing rather than sitting," Rapant testified that Dunn could not perform any of her past work. Tr. 55. However, given her age and education, and based on the same hypothetical limitations, Rapant testified that Dunn could perform other light,

unskilled work, such as a cashier, officer cleaner, or fast-food worker. Tr. 55-56. Upon questioning by Plaintiff's counsel regarding an individual who needs to take unscheduled breaks, would be off task at least 20% of the time, or would miss three or more days per month, Rapant testified that such a person would be unemployable. Tr. 57.

*Medical records.* The medical records before the ALJ span the years 2017–2021 and include: progress notes from Denver Harbor Clinic (Tr. 264-95); medical reports dated for the period August 1, 2017 through March 6, 2020 from Kelsey Seybold Clinic (Tr. 296-303, 753-978); the report of consultative examiner David M. McLendon dated January 21, 2020 (Tr. 304-12); the report of consultative examiner Manoj Bhhagubhai Vakil dated January 22, 2020 (Tr. 313-16); progress notes from Northwest Health Center dated June 15, 2020 (Tr. 317-24); the psychology consultative examiner report of Michael G. Ditsky dated June 22, 2020 (Tr. 325-30); treatment records from July 2020 from Smith Clinic (Tr. 331-49); treatment records from October-November 2019 from Legacy Community Health (Tr. 350-89); hospital records from St. Joseph Medical Center from a December 2, 2020 emergency room visit (Tr. 390-407); progress notes from Harris Health System (Tr. 408-752).

## B. The ALJ's Decision

On April 23, 2021, the ALJ issued a decision finding that Dunn was not disabled within the meaning of the Social Security Act from August 27, 2019 through the date of the decision. Tr. 17-28. The ALJ performed the standard five-step sequential analysis[2] and found Dunn was insured through December 31, 2024 and had not engaged in substantial gainful activity from her alleged onset date of August 27, 2019 through the date of the decision. Tr. 19. The ALJ found that Dunn had the severe impairments of "obesity, narcolepsy, depression, and a neurodevelopmental disorder." *Id.* The ALJ further found that none of Dunn's impairments met or equaled a Listing in Appendix 1. Tr. 20. The ALJ determined that Dunn retained the residual functional capacity (RFC):

> to perform light work as defined in 20 CFR 404.1567(b) except: she can occasionally reach overhead with the left upper extremity; she can understand, remember, and carry out simple one to three step tasks that are routine and repetitive in nature without frequent changes in duties; there should be no forced pace or assembly line work; and work should allow her to stand most of the time if she choses [sic].

Tr. 22. Based on the testimony of the vocational expert, the ALJ found that Dunn could not perform her past relevant work, but considering her age, education, work experience, and RFC, she could perform other jobs that exist in significant numbers in the national economy. Tr. 26-27. Therefore, the ALJ concluded that Dunn was

---

[2] 20 C.F.R. §§ 404.1520, 416.920.

not disabled within the meaning of the Social Security Act from August 27, 2019 through the date of the decision. Tr. 28.

## II. Standard for Review of the Commissioner's Decision

Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard and (2) whether the Commissioner's decision is supported by substantial evidence. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citations omitted). A decision is supported by substantial evidence if "credible evidentiary choices or medical findings support the decision." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (citation omitted)). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Id.* (citations omitted). When reviewing the Commissioner's decision, the court does not reweigh the evidence, try the questions de novo, or substitute its own judgment for that of the Commissioner. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (citing *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id*.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Schofield v. Saul*, 950 F.3d 315, 317 (5th Cir. 2020). "The claimant bears the burden of satisfying the first four steps of the analysis; the Commissioner bears the burden of establishing the fifth by demonstrating that other work the claimant can perform is available in the national economy." *Wilson v. Kijakazi*, No. 21-60663, 2022 WL 2339471, at *2 (5th Cir. June 29, 2022). A finding that the claimant is disabled or not disabled at any point in the five-step review terminates the analysis. 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

### III. Analysis

As stated above, judicial review of the Commissioner's final decision is limited to two inquiries: whether the decision is supported by substantial evidence, and whether the Commissioner's decision results from legal error. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The Fifth Circuit allows the judicial review of benefits decisions under 42 U.S.C. § 405(g) to be decided by summary judgment procedure. *Lovett v. Schweiker*, 667 F.2d 1, 1 (5th Cir. 1981) ("This court has allowed the summary judgment procedure if the district court has adequately reviewed the record and based its judgment on a finding of substantial evidence in the administrative record." (citing *Salinas v. Schweiker*, 662 F.2d 345 (5th Cir.

1981))). However, if a plaintiff fails to "challenge any specific determination by the ALJ or direct the Court's attention to any specific portion of the administrative record," demonstrating a lack of substantial evidence or legal error, she is not entitled to summary judgment in her favor. *See Davis v. Berryhill*, No. CV 4:17-00521, 2018 WL 618714, at *2 (S.D. Tex. Jan. 30, 2018) (noting Plaintiff's failure to challenge a specific determination by the ALJ or identify specific portions of the administrative record resulted in his failure to satisfy his burden on summary judgment that would entitle him to reversal or remand of the Commissioner's decision); *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) (district court did not err by not addressing issues plaintiff did not raise in her pleadings).

The ALJ performed the standard five-step sequential analysis and concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from her alleged onset date of August 27, 2019 through the date of the April 23, 2021 decision. Tr. 28. Plaintiff argues in her Motion for Summary Judgment that evidence in the administrative record supports a finding that she is disabled. ECF 21. However, as discussed in more detail with respect to the five-step analysis, Plaintiff's Motion for Summary Judgment fails to argue or establish that the ALJ's findings are not supported by substantial evidence or resulted from legal error. Plaintiff acknowledges in her Motion that she is not entitled to reversal of the ALJ's unfavorable decision "merely because substantial evidence would have supported an

opposite decision." ECF 21 at 7 (quoting *Clarke v. Bowen*, 843 F.2d 271, 273 (8th Cir. 1988).

### 1. Step One

At the first step, the ALJ decides whether the claimant is currently working or "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not disabled. No party challenged the ALJ's finding that Plaintiff had not engaged in substantial gainful activity since August 27, 2019. Tr. 19. The Court finds no reversible error at step one of the sequential analysis.

### 2. Step Two

At the second step, the ALJ determines whether the claimant has a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Social Security regulations provide that "[i]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. §§ 404.1520(c), 416.920(c). The Fifth Circuit recently clarified that "[t]hough the precise wording differs," Social Security Ruling 85-28 comports with its holding in *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). Thus, an ALJ does not commit legal error by citing SSR 85-28 instead of *Stone* and remand is not required

unless "there is no indication the ALJ applied the correct standard." *Id.* Further, if an ALJ proceeds past step two, any failure to apply the *Stone* standard is harmless if it is inconceivable that the result would have been different absent the failure. *Id.*

In this case, the ALJ cited and applied the severity standard articulated in SSR 85-28. Tr. 19. The ALJ found that Plaintiff had the severe impairments of "obesity, narcolepsy, depression, and a neurodevelopmental disorder." *Id.* Plaintiff did not challenge the ALJ's severity findings and based on its review of the administrative record, the Court finds no reversible error at step two of the sequential analysis.

### 3. Step Three

The third step of the sequential analysis requires the ALJ to determine whether the claimant's severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. p, app. 1. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). For a claimant to show than an impairment "medically equals" a listed impairment the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* (emphasis in original).

Plaintiff has not pointed to any error in the ALJ's analysis at Step Three. She does not point to any evidence in the record to support a finding that she meets *all* of the requirements of Listings 12.04, 12.11, 11.02 or any other Listing. Plaintiff references the Social Security Administration's Program Operations Manual System (POMS) 24580.005 regarding narcolepsy but acknowledges that "[n]arcolepsy in itself is not a Disability Listing warranting Disability Benefits." ECF 21 at 10. Plaintiff appears to argue that the diagnosis of narcolepsy "when it is severe, treated with drugs such as stimulants and mood elevators; coupled with ongoing treatment" supports a disability finding, referring to her testimony regarding her difficulty staying awake, staying focused and keeping up. *Id.* What Plaintiff fails to do is demonstrate based on record evidence that Plaintiff meets a Listing, or that the ALJ's contrary finding is not supported by substantial evidence or is legally incorrect.

The ALJ determined that none of Plaintiff's impairments, alone or in combination, met or equaled the severity of one of the listed impairments in Appendix 1. Tr. 20-22. The ALJ specifically discussed the requirements of Listings 12.04 and 12.11 for mental impairments and Listing 11.02 for epilepsy. It is the ALJ's job to weigh the evidence and this Court may not re-weigh the evidence or resolve conflicts in the evidence. *See Reddin v. Saul*, No. 2:20-CV-00908, 2022 WL 1816052, at *8 (W.D. La. May 4, 2022), report and recommendation adopted, No. 2:20-CV-00908, 2022 WL 1815830 (W.D. La. June 2, 2022). "[T]he ALJ is solely

responsible for deciding whether a listing is met or equaled." *Id.*; *Alvarado v. Berryhill*, No. CV H-18-3594, 2020 WL 420840, at *6 (S.D. Tex. Jan. 3, 2020), report and recommendation adopted, No. CV H-18-3594, 2020 WL 419730 (S.D. Tex. Jan. 25, 2020) (holding the determination whether a claimant's impairments meet or equal a Listing is reserved to the Commissioner, citing 20 C.F.R. § 404.1527(d)(2)).

The Court finds the ALJ did not err at step three of the sequential analysis in determining that Plaintiff's impairment did not meet or equal a Listing.

### 4. Step Four

At step four, the ALJ determines whether the claimant's Residual Functional Capacity permits performance of claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

#### A. Residual Functional Capacity

"The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments." *Giles v. Astrue*, 433 F. App'x 241, 245 (5th Cir. 2011). The ALJ here determined that Plaintiff can perform light work with additional physical and mental limitations. Tr. 22. Plaintiff's motion does not identify a specific error in the ALJ's determination but merely makes a general argument that she is disabled due to narcolepsy. *See* ECF 21 at 9-13.

12

The ALJ considered the "record as a whole" in assessing Plaintiff's RFC. Tr. 26. The ALJ's decision indicates that he considered all of the evidence attached to Plaintiff's motion, and she does not contend otherwise. The ALJ also expressly considered Plaintiff's hearing testimony, but found that Plaintiff's statements were "not entirely consistent with the medical evidence and other evidence in the record." Tr. 24. Specifically, the ALJ explained that Plaintiff was diagnosed with narcolepsy when she was 18, and that diagnosis was supported by a sleep study. *Id.* The sleep study, however, showed no evidence of arrhythmias and no "cataplexy," a symptom of severe narcolepsy discussed in POMS 24580.005. *Id.* Further, the ALJ explained that record reflected questionable compliance by Plaintiff with her narcolepsy medication. *Id.*

The ALJ also noted that Plaintiff's physical exams since the alleged onset date were "generally normal." Tr. 24. He found Dr. Vakil's physical consultative exam, performed in January 2020 and from which Dr. Vakil found she is limited to lifting and carrying up to 20 pounds, to be persuasive. The ALJ also considered the opinions of the state agency consultants who found Plaintiff had no severe impairments. *Id.* He found these opinions partly consistent with Plaintiff's medical records but concluded that the record—specifically the sleep study—supports a finding that Plaintiff has the severe impairment of narcolepsy. *Id.* The ALJ remarked that despite her narcolepsy diagnosis, the medical records do not contain

any doctor's limitations on her ability to drive. *Id.* Plaintiff testified that she does not drive often but can still drive and she avoids traffic and freeways. Tr. 53. Absent evidence of limitations, Plaintiff's diagnosis of narcolepsy does not establish disability. *See Ashford v. Comm'r, Soc. Sec. Admin.*, No. 6:11CV155, 2013 WL 821858, at *8 (E.D. Tex. Mar. 4, 2013) (citing *Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir. 1985).

Finally, the ALJ's RFC determination incorporated limitations for Plaintiff's obesity and, in order "to give claimant's allegations the benefit of all doubt," limited her RFC to work requiring only simple tasks. Tr. 25. In sum, the record reflects that ALJ considered all the record evidence and adequately explained his determination that her limitations are not as severe as she alleges as required by SSR16-3p, 2017 WL 5180304 (Oct. 25, 2017). It is the ALJ's job to weigh the evidence, resolve conflicts in the evidence, and make credibility determinations. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). Plaintiff has not met her burden to establish reversible error and the ALJ's RFC determination is supported by substantial evidence.

### B.  Past Work

Based on his RFC determination and the testimony of the vocational expert, the ALJ found that Plaintiff could not perform her past relevant work. Tr. 26-27. No party challenges this finding.

### 5. Step Five

The ALJ determines at step five whether the claimant can perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). The ALJ asked the vocational expert at the hearing whether an individual with Plaintiff's RFC, age, education, and work experience could perform any jobs. Tr. 55-56. The vocational expert identified three such jobs. *Id.* Plaintiff's counsel cross-examined the vocational expert as to whether an individual with additional limitations, which were not included in the ALJ's RFC finding, could perform any job in the national economy. TR. 57. The vocational expert confirmed an individual with those limitations would be unemployable and unable to work. Tr. 57. Despite the hypothetical questions posed to the vocational expert, Plaintiff has not pointed to objective medical evidence in the record that supports the additional limitations in Plaintiff's counsel's hypotheticals. Having found that the ALJ did not err in his RFC assessment, the Court finds no reversible error at step five of the sequential analysis.

## IV. Conclusion and Recommendation

For the reasons discussed above, the Court finds that Plaintiff failed to meet her summary judgment burden to present record evidence showing the Commissioner's decision was not supported by substantial evidence or resulted from legal error. Based on the Court's review of the entire administrative record, the

Court finds the ALJ's decision is supported by substantial evidence and not the result of legal error. Therefore, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF 21) be DENIED and Defendant's Motion for Summary Judgment (ECF 22) be GRANTED and this case be DISMISSED with prejudice.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(C). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on July 24, 2023, at Houston, Texas.

                                                  Christina A. Bryan
                                          United States Magistrate Judge